UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JESSICA THOMPSON and CORY THOMPSON,**

      **Plaintiffs,**

v.                                     Case No. 6:19-cv-1738-CEM-EJK

**SCHOOL BOARD OF OSCEOLA COUNTY, FLORIDA and RUSSELL GIBSON,**

      **Defendants.**
_____/

**ORDER**

THIS CAUSE is before the Court on Defendant Russell Gibson, in his official capacity as Sheriff of Osceola County, Florida's ("Defendant")[1] Motion for Summary Judgment (Doc. 98). Plaintiffs, on behalf of their minor child J.T., filed a Response (Doc. 115) to which Defendant filed a Reply (Doc. 117). For the reasons set forth herein, Defendant's motion will be granted.

**I.  BACKGROUND**

This case arises from an incident that occurred at Narcoossee Elementary School ("Elementary School") between J.T., staff of the Elementary School, and

---

[1] While there are two named Defendants in this case, Defendant School Board of Osceola County, Florida, is not involved in the instant motion.

Tricia Teems, an officer of the Osceola County Sheriff's Office. (Teems Incident Report, Doc. 96-1, at 3). The incident resulted in J.T. being handcuffed, detained, and taken to Park Place Behavioral Health Care ("Park Place")—a mental health facility—pursuant to section 394.463 of the Florida Statutes, commonly known as the Baker Act. (*Id.*; Park Place Records, Doc. 98-1, at 3–4).

At the time of the incident, J.T. was a ten-year-old autistic student at the Elementary School. (Doc. 96-1 at 3; J.T. Dep., Doc. 100, at 14:2–3, 16:3–19). On the day in question, J.T. did not receive his daily medication, and when he was outside at recess a teacher took his football away because she believed he was playing too rough. (Doc. 100 at 17:10–24). J.T. became upset and ran away from the recess area. (*Id.* at 18:11–17; Micher Dep., Doc. 101, at 27:15–19). He ran "towards Narcoossee [Road],"[2] (Doc. 101 at 28:16–17)—a "four-lane highway" bordering the

---

[2] Plaintiffs briefly argue in their Response that because J.T. never stated that it was his intention to run to or into Narcoossee Road, any testimony as to the intended direction of J.T.'s flight is "speculative" and should be stricken. (Doc. 115 at 5). Plaintiffs do not cite any legal authority for this proposition, nor do the rules of evidence support it. Federal Rule of Evidence 602 allows witnesses to testify as to matters of which they have "personal knowledge." The testimony at issue is not as to J.T.'s subjective intention; the witnesses here are testifying as to the direction that they saw J.T. run based on their personal knowledge and observations. This is permissible evidence that the Court will consider. Further, while there is evidence that J.T. may have also run in a different direction at some point during this incident, (*see, e.g.*, Doc. 103 at 41:18–42:7 (indicating that at some point J.T. may have been running toward the middle school car lane)), the undisputed evidence establishes that J.T. was running towards Narcoossee Road when Teems first began observing the scene and prior to J.T. being restrained, (*see* Doc. 96-1 at 3 ("Mr. Knoebel advised [that J.T.] had run off and jumped the fence onto the Middle School campus. As I arrived in the area, I observed [J.T.] in the distance run off and jump the fence again and start running toward the roadway."); Doc. 101 at 27:15–29:11 (explaining that J.T. was running towards the low part of a fence between the elementary school and the middle school that

Elementary School—and jumped over a school fence, (Doc. 100 at 33:16–17; Knoebel Dep., Doc. 103, at 35:5–13, 42:18).[3]

Rovard Micher, a paraprofessional at the Elementary School, saw J.T. running and began chasing after him. (Doc. 101 at 21:19, 28:7–12). Scott Knoebel, the Elementary School's Principal, also started chasing J.T. and called over the school radio for assistance from Teems, the School Resource Officer for the Elementary School and Narcoossee Middle School ("Middle School"). (Teems Dep., Doc. 102, at 16:10–12, 38:4–11; Doc. 103 at 17:2–4, 42:5–8, 47:3–7). As Teems exited the Middle School, which sits next to the Elementary School, she could see J.T. "was running towards the roadway." (Doc. 102 at 38:24–39:3).

Still in pursuit, Micher jumped over the same school fence, ran in front of J.T., and cut J.T. off as he "was still walking towards Narcoossee [Road]." (Doc. 101 at 29:5–11). As Micher spoke with J.T., he "kind of . . . settled down," although he was still "in a heated state." (*Id.* at 29:15–18, 30:20). J.T. "ran a couple of times . . . on the opposite side of the street, trying to get around [Micher]," but at some point started walking back toward the fence. (*Id.* at 34:21–24, 35:3).

---

he could jump over and that then he "was going towards Narcoossee [Road]" and once school officials caught up with him, J.T. was "still walking towards Narcoossee [Road]")).

[3] Per Plaintiffs' request, (Doc. 115 at 5), the Court takes judicial notice of the map (Doc. 111-4) depicting the Elementary School and Middle School campuses. Fed. R. Evid. 201(b)(2) (judicial notice may be taken of facts "not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *United States v. Proch*, 637 F.3d 1262, 1266 n.1 (11th Cir. 2011) (taking judicial notes of a map of Fort Walton Beach, Florida).

However, when Knoebel reached the scene J.T.'s behavior escalated. (*Id*. at 31:3–6). J.T. "ran at [Knoebel]" and "started punching at him and kicking at him," and grabbed Knoebel's shirt. (*Id*. at 31:10–13, 32:20–23, 33:6–7; *see also* Doc. 103 at 43:10). Micher and Knoebel then restrained J.T. against the fence. (Doc. 100 at 47:7–10, 47:18–20; Doc. 103 at 44:2–9). Teems arrived as J.T. was being restrained against the fence, and she could "hear him screaming that he wants to kill himself." (Doc. 102 at 44:25–45:2, 51:7–9; *see also* Doc. 96-1 at 3; Doc. 103 at 51:4–7). After the adults unsuccessfully attempted to calm J.T. down, Teems handcuffed and placed J.T. in the back of her police car. (Doc. 96-1 at 3; Doc. 101 at 36:19–25; Doc. 102 at 84:11–19; Doc. 103 at 45:10–13). At some point leading up to the handcuffing, J.T. was also "attacking and kicking [Teems]," (Doc. 101 at 37:23–25; *see also* Doc. 96-1 at 3), but once handcuffed J.T. calmed down, (Doc. 96–1 at 3; Doc. 102 at 84:16–17).

Teems then made phone calls to her supervisor and to J.T.'s mother. (Doc. 96-1 at 3). Teems' supervisor advised her to complete an involuntary Baker Act evaluation on J.T. (Doc. 102 at 42:24–25). J.T.'s mother informed Teems that she was not in the immediate vicinity of the Elementary School and of J.T.'s autism diagnosis. (Doc. 96-1 at 3; Doc. 102 at 42:16–20). Teems then transported J.T. to Park Place where she initiated a Baker Act examination. (Teems Baker Act Report, Doc. 98-1, at 6–7). J.T. was examined by a Park Place doctor who determined that

J.T. was not a danger to himself or others and released J.T. that same day. (Approval for Release, Doc. 98-1, at 5).

Plaintiffs brought this action against Defendant, in his official capacity, for: (1) false arrest pursuant to 42 U.S.C. § 1983 (Count IV); (2) false imprisonment pursuant to Florida common law (Count V); and (3) negligent infliction of emotional distress (Count VI). (Am. Compl., Doc. 72, ¶¶ 98–138). Plaintiffs base their claims on the events that occurred at the Elementary School and Park Place as well as Defendant's training and policies, or alleged lack thereof, that address how officers interact with developmentally disabled individuals. (*See generally id.*). Defendant moves for summary judgment on all three claims.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id*. "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.,* 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently,

the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

### III.   ANALYSIS

#### A.   False Arrest Claims (Counts IV and V)

Defendant moves for summary judgment on Plaintiffs' claims for false arrest pursuant to 42 U.S.C. § 1983 and Florida common law. In both claims Plaintiffs argue that J.T. was unlawfully seized and detained by Teems without probable cause in violation of his Fourth Amendment rights. (Doc. 72 ¶¶ 98–133). Defendant argues

that because Teems had probable cause to involuntarily detain J.T. under the Baker Act, both claims must fail. (Doc. 98 at 8–15).

A violation of Fourth Amendment rights may occur when an arrest or detention is made without probable cause.[4] *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). This includes seizures made to effectuate an involuntary examination pursuant to the Baker Act. *Haely v. Judd*, No. 8:12-cv-89-T-17TGW, 2012 WL 3204591, at *3 (M.D. Fla. Aug. 3, 2012); *Burgess v. Mayo*, No. 8:13-cv-2446-T-36AEP, 2014 WL 4373428, at *2 (M.D. Fla. Sept. 3, 2014). However, the existence of probable cause is "an absolute bar" to both Plaintiffs' § 1983 claim and their Florida false arrest claim.[5] *Rankin v. Evans*, 133 F.3d 1425, 1435, 1436 (11th Cir. 1998); *Davis v. City of Apopka*, 734 F. App'x 616, 621 (11th Cir. 2018). "The only difference in the probable cause analysis applicable to the state and federal

---

[4] The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. amend. IV. An arrest is a "seizure" under the Fourth Amendment, as is the detention of a person. *Ermini v. Scott*, 249 F. Supp. 3d 1253, 1271 (M.D. Fla. 2017) (citing *California v. Hodari D.*, 499 U.S. 621, 624 (1991)). The "reasonableness" of an arrest or detention turns on "the presence or absence of probable cause." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). Therefore, an arrest or detention made without probable cause is a violation of the Fourth Amendment and may form the basis of a § 1983 claim. *Brown v. City of Huntsville*, 608 F.3d 724, 734 n.15 (11th Cir. 2010).

[5] While Plaintiffs title Claim V "False Imprisonment," and while the Court recognizes that, in some instances, these causes of action are distinguishable, typically "false arrest and false imprisonment are different labels for the same cause of action." *Weissman v. K-Mart Corp.*, 396 So. 2d 1164, 1165 n.1 (Fla. 3d DCA 1981). Further, Florida "treat[s] false imprisonment and false arrest as essentially the same tort when the issue involves an arrest and detention by a law enforcement officer." *Willingham v. City of Orlando*, 929 So. 2d 43, 49–50 (Fla. 5th DCA 2006). Regardless of the label, probable cause "constitutes an affirmative defense to the claims of false arrest and imprisonment under Florida law." *Rankin*, 133 F.3d at 1436; *Willingham*, 929 So. 2d at 48.

claims at issue here is which party carrie[s] the burden of proving whether probable cause existed." *Rankin*, 133 F.3d at 1436. Under § 1983, it is Plaintiffs' burden to prove an absence of probable cause, whereas probable cause is an affirmative defense to the common law claim of false arrest, which must be proven by Defendant. *Rankin*, 133 F.3d at 1436; *Willingham v. City of Orlando*, 929 So. 2d 43, 48 (Fla. 5th DCA 2006).

"The probable cause standard is the same under Florida and federal law." *Davis*, 734 F. App'x at 621. Probable cause exists if "the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Watkins v. Bigwood*, 797 F. App'x 438, 442 (11th Cir. 2019) (citation omitted). This standard "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest," *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004), and is viewed from the "totality of the circumstances," *Maryland v. Pringle*, 540 U.S. 366, 370 (2003).

What amounts to probable cause also "depends on the elements of the alleged crime and the operative fact pattern." *Brown*, 608 F.3d at 735. To find a seizure

pursuant to the Baker Act[6] lawful, "probable cause must have existed—evidenced by [the plaintiff's] recent behavior—to believe that a 'substantial likelihood' existed that [the plaintiff] would cause 'serious bodily harm' to himself or to others in the near future."[7] *Watkins*, 797 F. App'x at 442 (quoting Fla. Stat. § 394.463(1)(b)(2)). "When the facts are not in dispute, whether probable cause existed is a question of law, and summary judgment is appropriate." *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990).

Plaintiffs primarily argue that Teems conducted a constitutionally deficient investigation such that probable cause did not validly exist. Specifically, that Teems should have asked more questions of the Elementary School's staff and J.T.'s mother from whom she would have learned of J.T.'s prior behavioral issues and lack of medication, which information would have, in Plaintiffs' view, negated any probable cause. (Doc. 115 at 14–15, 18–20). The Court disagrees. "An arresting officer is required to conduct a reasonable investigation to establish probable cause." *Rankin*, 133 F.3d at 1435. However, "once an officer makes an arrest based upon probable cause, [she] 'need not investigate independently every claim of innocence.'" *Id.* at

---

[6] The Baker Act allows for an individual to be involuntarily examined at a designated facility if "[t]here is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others in the near future, as evidenced by recent behavior." Fla. Stat. § 394.463(1)(b)(2).

[7] Because the Court finds that probable cause existed to seize and detain J.T. under the Baker Act, it need not address Defendant's alternate argument that a finding of probable cause for *any* offense would be sufficient to justify the seizure and detainment of J.T. pursuant to the Baker Act. (Doc. 98 at 11).

1436 (quoting *Tillman v. Coley*, 886 F.2d 317, 321 (11th Cir. 1989) (internal quotation omitted)).

After being informed of J.T.'s flight, Teems witnessed J.T. running in the direction of a busy roadway. (Doc. 102 at 38:24–39:3). When she arrived in the area, she saw J.T. "fighting" as he was being restrained against the fence, and he was physically violent toward Teems. (Doc. 96-1 at 3; Doc. 101 at 37:23–25; Doc. 102 at 45:2–3). She also heard him "screaming" suicidal desires and obscenities, and "again stated he just wanted to kill himself" even when he was handcuffed and calmed down. (Doc. 96-1 at 3; Doc. 102 at 45:1–2). Knoebel stated that J.T. was "out of control" and "being very violent," (Doc. 103 at 48:11–12), and Micher stated that when Teems arrived they tried to "talk him down," but J.T. "just kept getting violent" and remained "upset" and "heated," (Doc. 101 at 36:22–37:7).

These facts indicate to an objective observer more than just an upset child who "might cause" "some kind of bodily harm" "at some point in the future." *Watkins*, 797 F. App'x at 442. Teems personally witnessed a visibly distressed child running in the direction of a busy road, exhibiting physical violence toward multiple adults, resisting efforts to be calmed down, and repeatedly verbalizing, at times in a hysterical manner, suicidal desires. When viewed from the totality of the circumstances, the facts available to Teems at the time were sufficient to cause a person of reasonable caution to believe that this behavior presented a substantial

likelihood that J.T. would cause serious bodily harm to himself or others in the near future. *Id.* The Court thus finds that Teems had probable cause to seize J.T. pursuant to the Baker Act.

Further, this case is distinguishable from those cited by Plaintiffs where investigations were found to be deficient. For instance, there is no evidence that Teems "investigat[ed] selectively" or arrived at her probable cause determination in a biased manner, as was the case in *Kingsland v. City of Miami*, 382 F.3d 1220, 1228–29 (11th Cir. 2004) (declining to find probable cause existed as a matter of law where the investigating officers' "lack of corroboration through independent police work" was so indicative of bias it was as if they "turn[ed] a blind eye to exculpatory information . . . and instead support[ed] their actions on selected facts they chose to focus upon"), *abrogated on other grounds by Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020). Nor was further questioning necessary to fill in blatant factual gaps as in *Sevigny v. Dicksey*, 836 F.2d 953, 957–58 (4th Cir. 1988), because Teems based her probable cause determination on her personal observations of "[J.T.'s] actions towards himself and others." (Doc. 102 at 45:8–9).

Plaintiffs also challenge probable cause on the basis that Teems did not sufficiently take into account that J.T. had not verbalized a plan for committing self-harm, had no weapon on him, and had calmed down toward the end of the incident. (Doc. 115 at 11, 20). However, the probable cause standard "requires only a

probability or substantial chance of [the conduct at issue], not an actual showing of such [conduct]," *Illinois v. Gates*, 462 U.S. 213, 243–44 (1983), and is viewed from the totality of the circumstances rather than individual moments, *Maryland*, 540 U.S. at 370.

Thus, Teems was not required to produce an actual showing of J.T.'s plan or ability to harm himself or others, nor did probable cause dissipate because J.T. calmed down toward the end of the incident, particularly when he continued to make at least one suicidal statement during this time.[8] *See United States v. Hollingsworth*, No. 5:21-cr-35-JA-PRL, 2021 WL 3811949, at *3 (M.D. Fla. July 23, 2021) (discussing that while at times the defendant seemed calm and cooperative, probable cause existed to detain him under the Baker Act based on the totality of the circumstances rather than "various moments during [the] encounter"). Although Plaintiffs maintain that J.T.'s behavior did not represent his true intentions, that does not negate Teems' probable cause that existed based on the objective facts known to her at the time. *See Burgess*, 2014 WL 4373428 at *2 ("[E]ven if the Court were to draw the inference in [the plaintiff's] favor that . . . he was not in fact suicidal, that does not undermine the reasonableness of the officers' perception as to probable cause [pursuant to the Baker Act]."); *Sullivan v. City of Pembroke Pines*, 161 F.

---

[8] When J.T. was handcuffed and "calmed down," he "again stated he just wanted to kill himself." (Doc. 96-1 at 3).

App'x 906, 908 (11th Cir. 2006) (explaining that the probable cause standard is an objective one).

In sum, the Court finds that Defendant has met its burden in proving its affirmative defense under Florida law that Teems had probable cause to seize J.T. under the Baker Act, and conversely, that Plaintiffs have failed to meet their burden in demonstrating a lack of probable cause under § 1983. Thus, because no constitutional violation existed, the claim for false arrest under § 1983 must fail and further factors need not be addressed. And, because Teems' actions were lawfully based on probable cause, the claim for false arrest under Florida common law must fail. Summary judgment will be granted on these claims.

### B.    Negligent Infliction of Emotional Distress (Count VI)

Defendant also challenges Plaintiffs' claim for negligent infliction of emotional distress ("NIED") as lacking a legal basis. (Doc. 98 at 21–25). The Court notes that Plaintiffs did not respond to this argument in their Response, and in the Amended Complaint Plaintiffs do not clearly explain what conduct they believe forms the basis of holding Defendant liable for NIED. From what the Court can discern, the NIED claim appears to be directed at "Defendant Sheriff's conduct" but also alleges distress resulted from "defendants' actions and omissions" while incorporating allegations referring to both Officer Teems' actions during the events in question and Defendant's policies and training. (Doc. 72 ¶¶ 134–38). The Court

agrees with Defendant that either way—whether based on the conduct of Officer Teems or Defendant—the NIED claim lacks a legal basis and summary judgment is appropriate.

In construing the claim as attempting to hold Defendant vicariously liable through negligence for Officer Teems' allegedly tortious conduct, it must fail. "[I]t is not possible to have a cause of action for negligent use of excessive force," *Secondo v. Campbell*, 327 F. App'x 126, 131 (11th Cir. 2009) (quotation omitted), and "Florida does not recognize a cause of action for negligent arrest." *Asia v. City of Miami Gardens*, No. 14-20117-Civ-COOKE/TORRES, 2014 WL 12496894, at *4 (S.D. Fla. Aug. 15, 2014). This is because "there is no such thing as the "'negligent' commission of an 'intentional' tort." *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996) (quotations in original).

Thus, Plaintiffs cannot base a claim for negligence on the arrest or force used by Officer Teems in handcuffing and detaining J.T., nor does the evidence show, or Plaintiffs allege, any independent acts of negligence outside of those facts. *See Sanders*, 672 So. 2d at 48 (noting that "a separate negligence claim" must be "based upon a distinct act of negligence . . . *other than the actual application of force during the course of the arrest*") (emphasis in original). It follows that if such a claim cannot be brought against Officer Teems it "cannot serve as a basis on which to attach vicarious liability" onto Defendant. *Bickel v. City of Coral Springs*, No. 17-cv-

60606-BLOOM/Valle, 2017 WL 2439078, at *5 (S.D. Fla. June 6, 2017) (finding a claim for NIED against the city failed where the underlying allegation of "wrongful force" against the officer was "not legally cognizable").

To the extent Plaintiffs' NIED claim is based upon Defendant's policies and training, sovereign immunity bars this claim. In Florida, "a governmental agency is immune from tort liability based upon actions that involve its 'discretionary' functions, such as development and planning of governmental goals and policies." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001). "A . . . decision regarding how to train . . . officers and what subject matter to include in the training is clearly an exercise of governmental discretion." *Id.*; *see also Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) ("The determination of the content of a training program is a discretionary function for the city which is afforded sovereign immunity.").

Here, Plaintiffs challenge what was included, and what they feel was missing, in Defendant's training and specific policies relating to officers interacting with developmentally disabled individuals, (Doc. 155 at 8–10, 16), which goes to content and subject matter. Therefore, insofar as Plaintiffs' NIED claim can be construed as being premised on Defendant's policies and training these are discretionary governmental functions immune from tort liability.

## IV.   CONCLUSION

For the reasons stated herein, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant Russell Gibson, in his official capacity as Sheriff of Osceola County, Florida's Motion for Summary Judgment (Doc. 98) is **GRANTED**.

2. The Clerk is directed to enter judgment in favor of Defendant Russell Gibson, in his official capacity as Sheriff of Osceola County, Florida and against Plaintiffs, providing that Plaintiffs shall take nothing on any of their claims against Defendant. Thereafter, the Clerk shall terminate Russell Gibson, in his official capacity as Sheriff of Osceola County, Florida as a Defendant in this matter.

**DONE** and **ORDERED** in Orlando, Florida on January 31, 2022.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record